**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| DEBRA HELTON, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | CIVIL ACTION FILE NO. |
| | ) | 5:21-cv-00404-MTT |
| v. | ) | |
| | ) | |
| THE GEO. D. WARTHEN BANK, | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE GEO D. WARTHEN BANK'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

John D. Bennett, Esq.
Freeman Mathis & Gary, LLP
100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339
T – 770.818.0000
F – 770.937.9960

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ......................................... **Error! Bookmark not defined.**

II.   SUMMARY OF THE UNDISPUTED MATERIAL FACTS .............. **Error! Bookmark not defined.**

    A.   The Parties ......................................... **Error! Bookmark not defined.**

    B.   The Bank's Employment Policies. ...... **Error! Bookmark not defined.**

    C.   Plaintiff's Employment as Compliance Officer. **Error! Bookmark not defined.**

    D.   The Initial Discovery of Plaintiff's Violation of the Personal Finances Policy ................................... **Error! Bookmark not defined.**

    E.   The March 2019 and April 2019 Incidents. **Error! Bookmark not defined.**

    F.   Plaintiff is Reprimanded for Additional Violations of the Personal Finances Policy .................... **Error! Bookmark not defined.**

    G.   The September 23rd and October 7, 2019 Incidents and Plaintiff's Termination. ...................... **Error! Bookmark not defined.**

III.  ARGUMENT AND CITATION OF AUTHORITY .. **Error! Bookmark not defined.**

    A.   Plaintiff Cannot Demonstrate a Genuine Issue of Material Facts ................................................. **Error! Bookmark not defined.**

    B.   Plaintiff Cannot Establish Age or Sex Discrimination Under the Traditional McDonnell Douglas Framwork **Error! Bookmark not defined.**

        1.   Plaintiff was Not Replaced ...................................... -9-

        2.   Plaintiff Cannot Establish a Similarly Situated Comparator ..................................................... -11-

        3.   Legitimate, Non-Discriminatory Explanation ...................... -13-

        4.   Plaintiff Cannot Establish Pretext ......................................... -14-

i

C.    Plaintiff Cannot Establish a "Convincing Mosaic" Under *Smith* ................................................. **Error! Bookmark not defined.**

IV.   CONCLUSION ............................................. **Error! Bookmark not defined.**

I.      **Introduction**

Plaintiff Debra Helton ("Plaintiff") alleges that she was discriminated against because of her age and her sex by the Geo. D. Warthen Bank (the "Bank") when she was terminated on October 9, 2019.  On this basis, she has asserted claims under the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII").

These claims are ripe for summary judgment.  The circumstances surrounding Plaintiff's termination are simple and legitimate.  First, it was discovered in early Fall 2018 that she had violated the Bank's Personal Finances policy, which prohibits employees from using Bank software to make clandestine changes to their own accounts, as well as the accounts of their relatives.  Despite an email that went out to all Bank employees reminding them of this policy, Plaintiff continued to make unethical changes to her own accounts, as well as those of her husband and other family members, using Bank software.  She admits this.

In early May 2019, Plaintiff was reprimanded by the Bank for her repeated violations of the Personal Finances policy, and her access to the software needed to make the referenced changes was permanently removed.  Around the same time, she was admonished for failing to respond to FDIC auditors and for cursing and speaking unprofessionally towards co-workers during a Bank closing in April 2019, the latter of which was a topic that she and the President had previously discussed.  Plaintiff was advised that no further outbursts of this nature would be tolerated, and that she would need to stay in her own lane and out of the business of other departments.

Unfortunately, the Plaintiff is confrontational.  She admittedly demanded for changes to be made in the Loan Operations Department, which she did not manage, and which was instead managed by Ashley Haynes, and eventually engaged in a screaming match with Ms. Haynes before leaving work, turning out of the lights in her office, and rushing out of the building.  As she later

admitted, the incident in which Plaintiff yelled at Ms. Haynes had nothing to do with Plaintiff's Compliance duties.  When this and a related incident were brought to the attention of the Bank's President, he promptly terminated Plaintiff's employment.  This baseless action followed.

The President who terminated the Plaintiff is older than she is, not to mention 4 out of the 5 members of the Bank's Directors.  Beyond that, the Plaintiff was not replaced by either a male or a younger employee – instead, her primary duties were contracted out to third party, and the remainder of her duties split between a committee comprised mostly of women who are over the age of 40.  Additionally, Plaintiff cannot establish that a similarly-situated co-worker either (a) violated the Bank's Personal Finance policy or (b) was accused of unprofessional language by three separate co-workers within a seven-month period and yet remained employed.  No other evidence exists to support Plaintiff's specious claims.  Accordingly, summary judgment is due.

## II.   Summary of the Undisputed Material Facts

### A.   The Parties.

Plaintiff was employed by the Bank between October 1988 and October 2019, serving as its Compliance Officer during the last several years of her employment.  (Pl. Dep. 11:7-18, 46:23-25).[1]  Plaintiff alleges she was discriminated against because of her age (57) and sex (female) when she was terminated.  (Pl. Dep. 22:16-23:16, 43:4-44:1, 53:22-24).

The Bank is the oldest community bank in the State of Georgia, and its day-to-day operations are overseen by a President, Kenneth A. Bibb ("Bibb").  (Bibb. Decl. ¶¶ 2-3).  Mr. Bibb is older than the Plaintiff.  (Id.)  Mr. Bibb is supervised by the Bank's Chief Executive Officer

---

[1] The Bank incorporates by reference its Statement of Material Facts as to Which There is No Genuine Issue To Be Tried as though fully set forth herein. Here, the Bank provides a general overview of the undisputed facts, which are addressed more thoroughly in the argument section.

("CEO"), Chris Irwin, who is also older than the Plaintiff.  (Bibb Decl. ¶¶ 3-4; Pl. Dep. 47:7-15).[2]

Other members of management at the Bank during the relevant time period included Lamar Doolittle, the Chief Information Officer and Chief Operating Officer, and Karen Wilson, the Corporate Secretary and HR Director, both of whom are older than the Plaintiff.  (Doolittle Decl. ¶¶ 2-3; Wilson Decl. ¶ 2).  Below the C-Suite officers of the Bank were nine officer-level employees, seven (7) of whom were women.  (Pl. Dep. 61:7-62:8).  Plaintiff was promoted to Compliance Officer by Mr. Bibb when she was forty-seven (47) years old.  (Pl. Dep. 50:6-52:1).

**B.** **The Bank's Employment Policies.**

It is the Bank's policy for employees to conduct themselves in a professional manner, and to cooperate cheerfully with co-workers.  (Pl. Dep. 57:6-25; Pl. Dep. Ex. 3, p. 7, GDWB 000382).  The Bank also maintains a Personal Finances policy, which prohibits employees from using Bank software to make changes to their own financial accounts or those of their relatives while on duty.  (Pl. Dep. 59:19-60:20; Ex. 3, pp. 23-24, GDWB 000398-399; Bibb Decl. ¶ 7).  The Personal Finances policy is one of the Bank's most important policies.  (Bibb Decl. ¶ 7).

**C.** **Plaintiff's Employment as Compliance Officer**

As the Compliance Officer, Plaintiff was charged with developing, implementing, and administering the Bank's compliance program, complying with state and federal banking regulations, and assisting with FDIC audits and examinations.  (Pl. Dep. 62:9-63:23; Bibb Decl. ¶ 9).  Her job duties enabled her to have access to the "Bank Pac Maintenance Program," which allows an employee of the Bank to make changes to customer accounts.  (Pl. Dep. 68:8-70:13).

Unlike Mr. Bibb and Mr. Doolittle, who were both C-Suite officers, Plaintiff did not have

---

[2] The Bank is also overseen by a five-member Board of Directors, four of whom are older than the Plaintiff.  (Bibb Decl. ¶ 4; Pl. Dep. 53:5-55:12).

any direct subordinates, and lacked the ability to hire, fire, or recommend disciplinary action.  (Pl. Dep. 64:15-65:5; Doolittle Decl. ¶ 3).  Plaintiff also did not participate in employee disciplinary conferences or meetings.  (Pl. Dep. 65:8-12).

**D.      The Initial Discovery of Plaintiff's Violation of the Personal Finances Policy**

Kim Baucom serves as the Bank's Internal Auditor.  (Baucom Decl. ¶ 2; Pl. Dep. 71:11-18, 72:4-6).  One of Ms. Baucom's duties is to monitor and audit employee account activities via the Bank Pac Maintenance Program.  (Baucom Decl. ¶ 4; Pl. Dep. 71:19-23, 73:8-11).[3]

While conducting a routine audit in late August 2018, Ms. Baucom discovered that Plaintiff appeared to be making changes to her own accounts and those of her relatives while on Company time and using Bank software.  (Baucom Decl. ¶ 4).  Ms. Baucom subsequently advised Mr. Bibb of the issue and was thereafter asked to send an email to all Bank employees on September 3, 2018 reminding them that, "**as an employee of the Bank, you are not permitted to make changes to anything pertaining to relatives or immediate family members.  This includes teller transactions, account transfers, and any maintenance changes including loans**."  (Baucom Decl. ¶ 4, Ex. A; Pl. Dep. 84:3-85:6, Pl. Dep. Ex. 6) (Emphasis added).[4]

**E.      The March 2019 and April 2019 Incidents.**

Plaintiff's performance thereafter rapidly deteriorated.  First, on March 22, 2019, Mr. Bibb learned from the FDIC that Plaintiff failed to timely respond to inquiries in connection with a compliance examination.  (Bibb Decl. ¶ 9; Pl. Dep. Ex. 13).  He therefore reprimanded her in an email of the same date, in response to which Plaintiff admitted that the exam had "completely

---

[3] Audits such as those conducted by Ms. Baucom are required by federal regulations.  (Pl. Dep. 72:22-25).

[4] While Mr. Bibb was gravely concerned about this issue, he hoped that Plaintiff would realize that the September 3rd email was directed at her and that she would never again make a similar mistake.  (Bibb Decl. ¶ 8).

slipped my mind." (Pl. Dep. 119:20-121:7; Pl. Dep. Ex. 13).

Roughly two weeks later, Mr. Bibb admonished Plaintiff yet again, this time for behaving rudely and unprofessionally towards her co-workers on April 11, 2019.  On the day in question, Plaintiff was serving as the officer in charge of closing the Bank, which involves counting money and making sure it is reconciled.  (Pl. Dep. 106:18-107:15, 108:1-18; Pl. Dep. Ex. 12; Griswell Decl. ¶ 3).  Around 5:15 p.m. that evening, when a Teller announced that she was having trouble balancing and requested a recount, which was the closing officer's responsibility, Plaintiff became ill-tempered and yelled, "Shit, I have a damn appointment!" (Griswell Decl. ¶ 3, Ex. A; Pl. Dep. 108:19-110:13, 111:2-114:16; Pl. Dep. Ex 12).  Plaintiff admitted that the language she used was "inconsistent with the company's policies," "profane," "inappropriate," "unprofessional," and "problematic."  (Pl. Dep. 114:4-16).

After learning of the incident, Mr. Bibb counseled and reprimanded Plaintiff, advising her that additional outbursts, unprofessional language, and a loud tone of voice would not be tolerated. (Bibb Decl. ¶ 10; Pl. Dep. 114:17-116:13).  He also directed her to apologize to the employees who witnessed the incident.  (Bibb Decl. ¶ 10; Pl. Dep. 114:17-116:13; Pl. Dep. Ex. 12).[5]

## F.    **Plaintiff is Reprimanded for Additional Violations of the Personal Finances Policy**

On or about April 29, 2019, Ms. Baucom (the Internal Auditor) discovered that Plaintiff was continuing to commit violations of the Personal Finances policy.  (Baucom Decl. ¶ 5, Ex. B at pp. 1-4; Bibb Decl. ¶ 11).  Plaintiff readily admitted to violating the Personal Finances policy at her deposition, including by: (a) preventing money from being removed from her personal Bank

---

[5] This was not the first time Mr. Bibb had spoken with Plaintiff about her tone of voice or word usage – on several previous occasions, he had spoken with Plaintiff about her delivery and suggested different word usage as well as to try to keep her voice down when speaking with co-workers.  (Bibb Decl. ¶ 10; Pl. Dep. 117:6-19).

account (Pl. Dep. 73:17-74:7); (b) purging a transfer of funds from her account using the Bank Pac Maintenance Program (Pl. Dep. 74:21-75:15); and (c) making changes to her child's loan payment, to the account of her daughter's husband, to her husband's business checking account, and to the payment sequence on her husband's loan.  (Pl. Dep. 75:16-77:12, 77:13-78:9, 80:4-81:1, 81:2-15, 81:16-82:3, 88:16-90:3; Pl. Dep. Ex. 5 at GDWB 000449, 450, 452, 453-454).

Ms. Baucom reported her discovery to Mr. Bibb, who felt this represented a significant violation of the Bank's policies and was highly unethical, particularly in light of Plaintiff's position as the Compliance Officer.  (Bibb Decl. ¶ 11).[6]  Accordingly, Mr. Bibb held a meeting on May 13, 2019 between Plaintiff, Mr. Bibb, Ms. Wilson, and Mr. Doolittle, during which Plaintiff was reprimanded for violating the Personal Finances policy.  (Bibb Decl. ¶ 11, Ex. D; Pl. Dep. 86:10-18, Pl. Dep. Ex. 7).  During this meeting, Mr. Bibb advised Plaintiff that she was to focus solely on her compliance duties and to leave the other department heads to handle their respective areas of responsibility, and he also reminded Plaintiff of the need to be respectful when talking to fellow co-workers and that additional angry outbursts would not be tolerated.  (Pl. Dep. 100:1-14; Bibb Decl. ¶ 11, Ex. D).  Thereafter, Plaintiff's administrative access to the Bank Pac Maintenance Program was removed.  (Bibb Decl. ¶ 11; Pl. Dep. 100:1-14, 103:3-105:1, 125:25-126:4). Following the meeting, Plaintiff sent an email to Mr. Bibb and Mr. Irwin (CEO) in which she admitted, "I am fully aware that I did do and knowledge [sic] completely the transactions…I am guilty of setting up transfers and deleting."  (Pl. Dep. 98:6-99:20; Pl. Dep. Ex. 10).

**G.    The September 23rd and October 7, 2019 Incidents and Plaintiff's Termination.**

Ashley Haynes is the Bank's Loan Operations Manager.  (Haynes Decl. ¶ 2; Pl. Dep. 124:8-

---

[6] Although Mr. Bibb believed that Plaintiff's financial misconduct was very serious and highly unethical, he ultimately chose not to file a suspicious activity report with the FDIC in connection with the issue, because had he done so, Plaintiff would have never been able to work in the banking industry again.  (Bibb Decl. ¶ 12).

12).  On several occasions prior to October 7, 2019, Plaintiff and Ms. Haynes discussed and disagreed about the default collection sequence for Adjustable Rate Mortgage ("ARM") loans when a customer makes an overpayment.  (Haynes Decl. ¶ 3; Pl. Dep. 126:14-127:15).  In essence, Plaintiff felt that the default collection sequence should be changed, such that late fees were collected before escrow fees.  (Haynes Decl. ¶ 3; Pl. Dep. 126:14-127:15).

Ashley Haynes was out on vacation during the week of September 23, 2019.  (Gonzalez Decl. ¶ 3; Haynes Decl. ¶ 3; Pl. Dep. 124:21-125:5; Pl. Dep. Ex. 14).  When Ms. Haynes returned the following week, one of her subordinates, Ivan Gonzalez, reported that Plaintiff raised her voice and yelled at him in a loud and unprofessional manner after he refused to make changes to the collection sequence for ARM loans.  (Gonzalez Decl. ¶ 3; Haynes Decl. ¶ 3; Pl. Dep. Ex. 14).

On October 7, 2019, Plaintiff again confronted Ms. Haynes about the ARM collections sequence.  (Haynes Decl. ¶ 3; Pl. Dep. 126:14-127:25, 128:6-129:15).  When Ms. Haynes refused to make the change and advised Plaintiff it was not a compliance issue, Plaintiff "raised [her] voice," turned off the lights in her office, and left work for the day, which was subsequently reported to Mr. Bibb.  (Haynes Decl. ¶ 3; Bibb Decl. ¶ 13, Ex. E; Pl. Dep. 128:6-21).[7]

Mr. Bibb determined that Plaintiff's behavior during the September 23 and October 7, 2019 incidents violated the directives given to her during the May 15, 2019 disciplinary meeting – Plaintiff did not supervise the Loan Operations Department, she had been instructed to leave the other department heads to handle their respective areas of responsibility, and she had also been directed to behave courteously and professionally towards her co-workers.  (Wilson Decl. ¶ 6, Ex. C; Bibb Decl. ¶ 13; Pl. Dep. 125:25-126:4).  Mr. Bibb therefore made the decision to terminate

---

[7] After Plaintiff left work, she sent Ms. Haynes an email in which she acknowledged that the payment sequence dispute was "not a compliance issue."  (Haynes Decl. ¶ 4, Ex. B; Pl. Dep. 129:16-131:5; Pl. Dep. Ex. 15).

Plaintiff's employment on October 9, 2019, which followed prior counseling in March, April, and

May 2019.  (Wilson Decl. ¶ 7; Bibb Decl. ¶ 14; Pl. Dep. 138:18-141:19, 141:23-142:3).

### III.      Argument and Citation of Authority

### A.      Plaintiff Cannot Demonstrate a Genuine Issue of Material Fact.

Both of Plaintiff's claims fail.  As the foregoing will demonstrate, in addition to her

inability to demonstrate that she was replaced by or treated differently than a similarly situated

comparator outside of her protected classes, Plaintiff cannot make the requisite showing of pretext

with respect to the legitimate, non-discriminatory reasons articulated by the Bank for the

termination of her position, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973),

nor can she present "a convincing mosaic of circumstantial evidence" sufficient to create a

reasonable inference of intentional discrimination.  Smith v. Lockheed-Martin Corp., 644 F.3d

1321, 1328 (11th Cir. 2011).  Thus, summary judgment is due as a matter of law.[8]

### B.      Plaintiff Cannot Establish Age or Sex Discrimination Under the Traditional McDonnell Douglas Framework.

Under McDonnell Douglas, the Plaintiff must first establish a prima facie case. To do so

in the absence of direct evidence[9] of discrimination, the Plaintiff must establish (among other

---

[8] An employee alleging workplace discrimination can meet her burden of proof in one of two ways. Sims v. MVM, Inc., 704 F.3d 1327, 1332 (11th Cir. 2013). The employee can proceed under the traditional burden-shifting framework established in McDonnell Douglas, or present circumstantial evidence that "creates a triable issue concerning the employer's discriminatory intent" under Smith. Id. at 1333 (quoting Smith, 644 F.3d at 1328).

[9] "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age [or sex] ... constitute direct evidence of [] discrimination." Ritchie v. Indus. Steel, 426 F. App'x 867, 871 (11th Cir. 2011) (quoting Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989)).  "For a statement to constitute direct evidence, it must be made by a person involved in the challenged decision" and related to the decision-making process itself.  Lewis v. Sch. Bd. Of Palm Beach Cty., 2021 U.S. App. LEXIS 6876, at *8 (11th Cir. Mar. 9, 2021) (citing Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998)).  Here, Plaintiff admits she was never told (orally or in writing) that she was being terminated because of her age or sex. (Pl. Dep. 141:20-22, 145:7-15).

elements) that she was either (a) replaced by an individual outside of her protected class or (b) that she was treated less favorably than a similarly-situated co-worker outside of her protected class.[10] See Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003). Plaintiff cannot do so.

### 1.     Plaintiff Was Not Replaced.

As an initial matter, Plaintiff cannot establish that she was either (a) replaced by a man, as required for her sex discrimination claim, or (b) replaced by a significantly younger employee, which is required for her age discrimination claim.

With regard to whether Plaintiff was "replaced" in her position as the Compliance Officer, "where [an] employee's position is clearly delineated and responsibilities are well defined, the court should focus on the person that physically replaced the employee or consider whether that job title was actually filled." Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1082 (11th Cir. 2005) (citing Hawkins v. Ceco Corp., 883 F.2d 977, 982 (11th Cir. 1989)).  A plaintiff's development of the record must be sufficient "to show that the replacement actually performed [] plaintiff's duties," Hawkins v. Ceco Corp., 883 F.2d 977, 982 (11th Cir. 1989), and include evidence that the replacement was younger or a different sex. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) ("For factual issues to be considered genuine, they must have a real basis in the record.").  Finally, if an employee's position is eliminated, she is not "replaced," even if her job duties are absorbed by

---

[10] In the age discrimination context, the employee must also show her replacement and/or comparator was substantially younger.  See LeDouzx v. AGL Resources, Inc., No. 1:05-CV-2621-CAP, 2006 WL 2246182, *8-9 (N.D. Ga. Aug. 4, 2006).  An inference that an employment decision was based on an illegal reason "cannot be drawn from the replacement of one worker with another worker insignificantly younger." O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312-13 (1996); see also Baker v. Sears, Roebuck & Company, 903 F.2d 1515, 1520 (11th Cir.1990) (affirming district court's holding that a plaintiff can establish this prong of her prima facie case if she shows that she was replaced by a substantially younger person).

other employees outside of her protective class. Under such circumstances, the employee establishes a prima facie case only by showing that her employer "abolished" the position "for discriminatory reasons." Minton v. American. Bankers Ins. Group, 2003 WL 21303330, at *3 (11th Cir. Feb. 6, 2003) (granting summary judgment where alleged replacement absorbed some, but not all, of plaintiff's responsibilities, did not assume her title, and her former duties were scattered among several employees, some of whom were younger and some of whom were within the same age group). See also Hawkins, 883 F.2d at 984; Puckett v. McPhillips Shinbaum, LLP, 2008 WL 906569, at *9-11 (M.D. Ala. Mar. 31, 2008) (same).

The undisputed record demonstrates that Plaintiff was simply not "replaced" by an employee of the Bank. Following her separation, most of Plaintiff's compliance duties were contracted out to a third-party contractor (Steven Moore Compliance Services), and the remainder of Plaintiff's duties were absorbed by a seven-member committee that works with the contractor to manage the compliance duties. (Haynes Decl. ¶ 7; Bibb Decl. ¶ 19, Ex. F; Pl. Dep. 147:6-148:15). Notably, the seven-member Compliance Committee is comprised of *six women* and includes *five who are over the age of forty*. (Haynes Decl. ¶ 7; Bibb Decl. ¶ 19; Pl. Dep. 147:6-148:15).[11] According to the black letter law of this Circuit, under these circumstances, Plaintiff cannot establish that she was "replaced" by either a man or a younger employee.[12]

---

[11] Because the FDIC requires banks to have a designated compliance officer, Ashley Haynes and Stephanie McAfee were given the additional titles of "Interim Loan Compliance Office" and "Interim Deposit Compliance Officer," respectively – however, these are merely titles, as neither of their job responsibilities changed following Plaintiff's separation. (Haynes Decl. ¶ 7; Bibb Decl. ¶ 19). In fact, the signature line of Ms. Haynes's company email still lists her title as "Loan Operations Manager" and makes no reference to compliance. (Haynes Decl. ¶ 7).

[12] See also Hogue v. Secretary, U.S. Dept. of the Army, 718 F. App'x 877, 879 (11th Cir. 2017) ("While Hogue identified three individuals ... who he claimed were younger than him and replaced him, nothing in the record supports his assertion that they were younger than him, or that they replaced him."); Humphrey v. Napolitano, 517 F. App'x 705, 708-09 (11th Cir. 2013) (plaintiff failed to make out a prima facie case because he could not "identify any younger

## 2.      <u>Plaintiff Cannot Establish a Similarly Situated Comparator</u>.

Plaintiff also cannot establish a prima facie case by pointing to a comparative employee outside of her protected class who is otherwise similarly situated to her in "all material aspects" but was treated differently by the Bank.  <u>Lewis v. City of Union City</u>, 918 F.3d 1213, 1226 (11th Cir. 2019). To determine whether a comparator is similarly situated, the Eleventh Circuit instructs courts to consider whether the comparator (1) "engaged in the same basic conduct (or misconduct) as the plaintiff"; (2) has "been subject to the same employment policy, guideline, or rule as the plaintiff"; (3) has "been under the jurisdiction of the same supervisor as the plaintiff"; and (4) "share[d] the plaintiff's employment or disciplinary history."  <u>Id.</u> at 1227-28.

In her Complaint and in discovery, Plaintiff identified three purported comparators: (1) Ken Bibb; (2) Lamar Doolittle; and (3) Ronnie May.  (Doc. 1, Compl. ¶¶ 14-23).  None of these individuals is a proper comparator.

As an initial matter, none of Plaintiff's alleged comparators had the same job title or even remotely similar duties.  Plaintiff was the Compliance Officer, whereas Mr. Bibb was the President (and supervised the day-to-day direction of the Bank), Mr. Doolittle was the CIO/COO (managing operations and IT-related issues), and Mr. May was a vice president and bank manager. (Pl. Dep. 53:5-55:12; Bibb. Decl. ¶¶ 2-4, 16; Doolittle Decl. ¶ 2; Herringdine Decl. ¶ 6; Wilson Decl. ¶ 10). Second, Mr. Bibb and Mr. Doolittle are both older than Plaintiff, and Mr. May voluntarily retired

---

employees that replaced him, filled the position that he desired, or were otherwise treated more favorably."); <u>Gary v. City of Warner Robins</u>, No. 5:16-cv-151 (TES), 2018 WL 3825220, *8 (M.D. Ga. Aug. 10, 2018) (plaintiff could not establish a prima facie case where the City did not hire or promote anyone to fill his position); <u>Carson v. Belk, Inc.</u>, No. 3:11-cv-65 (CAR), 2012 WL 3600857, *6 (M.D. Ga. Aug. 21. 2012) (plaintiff could not establish a prima facie case when alleged replacement "was already an employee when Plaintiff left" and "was never made a full-time beauty advisor," like plaintiff); <u>Lilley v. BTM Corp.</u>, 958 F.2d 746, 752 (6th Cir.1992) ("Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement.")

in 2012 (and is also older than Plaintiff).  (Bibb. Decl. ¶ 3; Pl. Dep. 53:16-54:6; Doolittle Decl. ¶¶ 2-3).  Third, as Compliance Officer, Plaintiff did not have any subordinates, lacked the ability to hire, fire, or recommend disciplinary action, and did not regularly attend Board meetings; in contrast, Mr. Bibb and Mr. Doolittle did all of the above.  (Pl. Dep. 64:15-65:12, 162:14-21; Doolittle Decl. ¶ 3; Bibb Decl. ¶¶ 2-4).

Plaintiff also cannot compare herself to Mr. Bibb, Mr. Doolittle, and Mr. May for another important reason – unlike Plaintiff, none of these individuals were *ever* accused of violating the Personal Finance policy.  Indeed, there is no record evidence that any employee of the Bank other than Plaintiff has ever been accused of doing so.  (Pl. Dep. 153:2-5; Green Decl. ¶ 5; Gonzalez Decl. ¶ 4; Griswell Decl. ¶ 4; Haynes Decl. ¶ 5; Wilson Decl. ¶ 9; Bibb Decl. ¶¶ 7, 15).

Finally, whereas Plaintiff was accused by *three* different co-workers in a *seven-month* period of yelling, cursing, and/or raising her voice in an unprofessional manner, with every single one of these incidents coming to Mr. Bibb's attention, the same cannot be said of any of her comparators.  There is no admissible evidence that Mr. Bibb has ever yelled, cursed, or raised his voice in an unprofessional manner, let alone that any employee (and certainly not three employees within a seven month period) reported such alleged misconduct to his supervisor.  (Herringdine Decl. ¶ 8; Green Decl. ¶ 6; Griswell Decl. ¶ 5; Wilson Decl. ¶ 10). As for Mr. Doolittle, there is no evidence that any employees have ever complained to Mr. Bibb about his use of unprofessional language or tone of voice, let alone three employees within a seven-month period, and unlike Plaintiff, Mr. Doolittle has never been counseled by Mr. Bibb about his professionalism or use of inappropriate language.  (Green Decl. ¶ 5; Bibb Decl. ¶ 16; Herringdine Decl. ¶ 7; Doolittle Decl. ¶¶ 4, 6).  Finally, with respect to Mr. May, when a single incident of alleged inappropriate treatment of a co-worker was brought to Mr. Bibb's attention by Mr. May's subordinate, he promptly

addressed the issue and reprimanded Mr. May, and no further incidents were reported – indeed, the co-worker who reported the issue subsequently spoke favorably about Mr. May at his retirement party in 2012.  (Herringdine Decl. ¶ 6; Wilson Decl. ¶ 10; Bibb Decl. ¶ 16).

In light of the foregoing, under <u>Lewis</u> and its progeny, Plaintiff has not and cannot establish a similarly-situated comparator who was treated differently by the Bank.  <u>See, e.g.</u>, <u>McCreigh v. Auburn Bank</u>, 2022 WL 2541127, *5 (M.D. Ala. July 7, 2022) (rejecting plaintiff's proposed comparators under <u>Lewis</u> because they did not share the same basic conduct, the same tenures, and the same disciplinary histories); <u>King v. City of Sylvester</u>, No. 1:20-cv-80 (LAG), 2022 WL 1417315, *7 (M.D. Ga. Mar. 31, 2022) (a higher-ranking lieutenant was not a proper comparator of the plaintiff, a sergeant, because of his position and differential disciplinary history); <u>Webb v. Brennan</u>, No. 1:17-cv-170 (LAG) 2019 WL 13099202, *8 (M.D. Ga. Sept. 26, 2019) (alleged comparator was not similarly situated because, unlike plaintiff, he was not found to have given inconsistent statements during an interview or been found to have similar cash shortages).  In addition, the singular incident involving Mr. May – for which he was similarly counseled – occurred over *ten years* before the multiple incidents that led to Plaintiff's separation.  <u>See</u> <u>Wright v. Department of Corrections</u>, 2020 WL 2085972 (M.D. Ala. Apr. 30, 2020) (ten years between alleged comparator's infraction was "simply far too remote").[13]

---

[13] <u>See</u> <u>Lee v. Kansas City So. Ry.</u>, 547 F.3d 253, 259 (5th Cir. 2009) ("Employees ... who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated."); <u>Epps v. First Energy Nuclear Operating Co.</u>, No. 11–462, 2013 WL 1216858, at *19 (W.D.Pa. Mar. 25, 2013) (incident involving the alleged comparator was "too remote in time from [plaintiff's] incident, which occurred more than four and a half years later"); <u>Newton–Haskoor v. Coface N. Am.</u>, No. 11–3931, 2012 WL 1813102 at *5 (D.N.J. May 17, 2012) (concluding that "the nature of the parties' alleged behavior is too dissimilar and the time periods in which the behaviors occurred [approximately two years apart] are too remote to conclude the two were 'similarly situated' so as to permit the inference of discrimination advanced by Plaintiff").

3.      **Legitimate, Non-Discriminatory Explanation.**

Even if Plaintiff could establish a prima facie case of either age or sex discrimination under McDonnell Douglas – which she cannot – the Bank has articulated legitimate, non-discriminatory reasons for her termination.  In this regard, the record establishes that the Bank's policies require employees to conduct themselves at all times in a professional manner, and to cooperate cheerfully with personnel in their department and in other departments.  (Pl. Dep. 57:6-25; Pl. Dep. Ex. 3, p. 7, GDWB 000382; Bibb Decl. ¶ 6).  In addition, employees of the Bank are prohibited from making changes to their own accounts or those of their relatives using Bank software.  (Pl. Dep. 59:19-60:20; Ex. 3, pp. 23-24, GDWB 000398-399; Bibb Decl. ¶ 7).

As noted above, Plaintiff was initially found to have violated the Personal Finances policy in September 2018, and after discovery of the same issue again in late April 2019, she was reprimanded and her ability to access to Bank Pac Management program was removed.  Right around the same time, she was reprimanded in late March 2019 and then in early April 2019 for (a) failing to respond to an FDIC audit and (b) unprofessionally cursing at her co-workers.  A few months later, two different co-workers reported that she had yelled at them unprofessionally and attempted to engage in matters outside of her scope of authority.  Therefore, Mr. Bibb made the decision to terminate Plaintiff's employment.

The Bank has thus plainly articulated legitimate, non-discriminatory reasons for the termination, and has met its "exceedingly light" burden of production.  Ellison v. St. Joseph's/Candler Health Sys., Inc., 775 F. App'x 634, 644 (11th Cir. 2019).

4.      **Plaintiff Cannot Establish Pretext.**

The law teaches that "federal courts do not sit as a super-personnel department that reexamines an entity's business decisions." See Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th

14

Cir. 2000).  Rather, the "sole concern" in age and sex discrimination cases is whether the employer engaged in unlawful discrimination, not whether the employer was right or wrong in its decision to terminate the employee.  <u>Alvarez v. Royal Atl. Devs., Inc.</u>, 610 F.3d 1253, 1266 (11th Cir. 2010). In other words, "[a]n employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." <u>Id.</u> (citation and alteration omitted).

This means that once Bank articulates legitimate, nondiscriminatory reasons for its decision, the burden shifts back to Plaintiff to demonstrate "that the reasons given by [the Bank] were not the real reasons for the adverse employment decision," but rather were a pretext for age or sex discrimination.  <u>See</u> <u>Chapman</u>, 229 F.3d at 1024.  When – as in this case – the employer's "proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." <u>See</u> <u>id.</u> at 1030.  To satisfy her burden, Plaintiff must demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [the Bank's] rationale." <u>See</u> <u>Holland v. Gee</u>, 677 F.3d 1047, 1055-56 (11th Cir. 2012). A reason is not pretextual unless both the given reason was false, and discrimination was the real reason. <u>See</u> <u>Brooks v. Cty. Comm'n of Jefferson Cty.</u>, 446 F.3d 1160, 1163 (11th Cir. 2006). Plaintiff cannot meet this burden.

As an initial matter, Plaintiff's burden is made considerably more difficult by the existence of undisputed facts that strongly suggest the lack of a discriminatory motive.  One such fact is that Mr. Bibb, the decision-maker, is well over the age of forty and was in fact older than the Plaintiff. Similarly, the newly-created compliance committee is comprised mostly of women and other individuals who were over the age of forty.  Another fact is that the HR official who sat in on the termination meeting, Karen Wilson, is a female who is also older than the Plaintiff.  <u>See</u> <u>Elrod v.</u>

<u>Sears, Roebuck & Co.</u>, 939 F.2d 1466, 1471 (11th Cir. 1991) (when the decisionmaker is in the same class as the plaintiff, it is difficult to show discriminatory motive); <u>see also</u> <u>Robinson v. UPS</u>, No. 1:06-cv-2601-RLV, 2007 WL 484743, at *5 (N.D. Ga. Nov. 14, 2007) (same); <u>Oshodi v. Lockheed Martin Corp.</u>, No. 1:09-cv-1341-JEC-GGB, 2011 U.S. Dist. LEXIS 162618, at *60 (N.D. Ga. Jan. 6, 2011) (same).  The same is true of the Board of Directors, which is comprised almost exclusively of older workers, not to mention Mr. Doolittle, who is older as well.  Another such fact is that, at the time of Plaintiff's termination, most of the Bank's employees were women, and less than one-third (1/3) were under forty (40) years of age.  (Bibb Decl. ¶ 18; Pl. Dep. 145:16-146:6).[14]  <u>See</u> <u>Mize</u>, 93 F.3d at 743 (on summary judgment, inferences may be drawn "only if they are reasonable in view of other undisputed background or contextual facts…").

In addition, Plaintiff admitted at her deposition that if a company honestly believed that an officer-level employee had engaged in unprofessional behavior towards co-workers on *multiple occasions* within a *seven-month* period, that would be a legitimate reason for separating the employee.  (Pl. Dep. 131:6-13).  That is, of course, the articulated basis here.  Further, Plaintiff cannot demonstrate that the reasons articulated in connection with her separation changed or shifted over time.  (Pl. Dep. 138:18-141:19, 141:23-142:3).  There is also no evidence that anyone at the Bank has ever made any ageist or sexist comments. (Herringdine Decl. ¶ 5; Green Decl. ¶ 4; Gonzalez Decl. ¶ 4; Baucom Decl. ¶ 6; Griswell Decl. ¶ 4; Doolittle Decl. ¶ 7; Haynes Decl. ¶ 5; Wilson Decl. ¶ 9; Bibb Decl. ¶ 15; Pl. Dep. 174:3-8).

Left to speculate and to throw missing darts, Plaintiff seemingly alleges that her termination was part of concerted effort to get rid of older female workers.  This theory is supported

---

[14] <u>See, e.g.</u>, <u>Leath v. Hansell</u>, 2008 WL 151869, at *8 (M.D. Fla. Jan. 14, 2008) ("Nor is there any basis to conclude that a board which is three-fifths comprised of African-American officers would rule against [the African-American] Plaintiff on the basis of his race.").

by pure speculation and is belied by the admissible evidence.  Of course, "[c]onclusory allegations and speculation are insufficient to create a genuine issue of material fact." <u>Valderrama v. Rousseau</u>, 780 F.3d 1108, 1112 (11th Cir. 2015) (citing <u>Cordoba v. Dillard's Inc.</u>, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.")).

In any event, while Plaintiff points to a 2016 restructuring involving the permanent closure of a second Bank branch, the undisputed evidence shows that of the employees impacted by the restructuring, it was purely their choice to accept or reject an early retirement offer.  (Bibb Decl. ¶ 17; Pl. Dep. 149:21-150:23, 150:24-152:15).  Indeed, one of the impacted employees who was over the age of sixty (60) rejected the Bank's early retirement package and instead chose to continue working until she voluntarily retired at the age of sixty-nine (69) in 2019, which the Bank supported.  (Herringdine Decl. ¶ 4; Bibb Decl. ¶ 17; Pl. Dep. 150:24-152:15). In addition, there were four other younger employees who were involuntarily separated (ages 45, 48, 33, and 23) at the same time, two of whom were under the age of 40, meaning the branch's closure impacted employees across all age levels.  (Bibb Decl. ¶ 17; Pl. Dep. 150:24-152:15, 152:10-12).  Notably, one of the over-forty individuals who was involuntarily separated at the time of the branch closure – Andrea Calloway – was ultimately rehired a short time later.  (Bibb Decl. ¶ 17; Pl. Dep. 150:24-152:15).  Accordingly, the 2016 restructuring – which impacted employees at all age levels and had nothing to do with violations of the Finances Policy or improper behavior towards co-workers – has absolutely no relevance to this action.  Again, Plaintiff was not terminated as part of a restructuring or offered an "early retirement" package, and this Court is not a "super personnel" department that has the ability to re-examine the reasons behind the 2016 branch closure.

Plaintiff also points to situations involving other female employees, specifically Jessica

Ford and Kathy Brooks, in a baseless effort to show pretext.  Neither former employee is relevant. First, there is no evidence that either employee was accused of violating the Personal Finances policy, let alone accused by three different employees within a seven-month period of unprofessionalism, yelling, improper tone of voice, etc.  Second, as for Ms. Ford, the evidence is that she was a coordinator of online banking, was terminated in 2013, was never demoted by the Bank, did not have her salary reduced at any time prior to her termination, and was not given or otherwise required to sign a separation agreement or a general release of claims.  (Bibb Decl. ¶ 20; Pl. Dep. 155:22-159:7).  Third, in terms of Kathy Brooks, the relevant evidence shows that in August 2019, it was determined that the Bank's Loan Department (where Brooks worked at the time) was overstaffed, and as a result, in lieu of termination, Ms. Brooks was transferred to the Teller department, resulting in her salary being downgraded to a Teller's pay scale, after which she continued working for the Bank until she voluntarily resigned on or about September 1, 2021. (Bibb Decl. ¶ 21; Pl. Dep. 171:4-172:24).  Simply put, Jessica Ford and Kathy Brooks have no relevance to the Plaintiff's individual disparate treatment claims.

In summary, Plaintiff cannot establish a genuine issue of fact as to pretext and her age and sex discrimination claims fail under the McDonnell-Douglas framework.

**C.    Plaintiff Cannot Establish a "Convincing Mosaic" Under *Smith*.**

Plaintiff also cannot establish a "convincing mosaic" of age- or sex-related intentional discriminatory evidence under Smith.  A "convincing mosaic" can be broken down into three broad categories of circumstantial evidence: "(1) suspicious timing, ambiguous statements, similar behavior directed at other members of the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) systematically better treatment of those outside the protected class; and (3) pretext in the employer's justification."  Robertson v.

Riverstone Communities, LLC, No. 1:17-CV-02668-CAP, 2019 WL 3282991, at *6 (N.D. Ga. July 22, 2019) (quotation marks omitted). Here, because the only evidence Plaintiff could conceivably point to in an effort to create a "mosaic" is the evidence addressed by the Bank above, she cannot present a mosaic, let alone a "convincing" one.  See Mitchell v. Pilgrim's Pride Corp., 817 Fed. App'x 701, 710 (11th Cir. 2020) ("[Plaintiff] failed to assemble any type of mosaic, let alone a convincing one" when based on same evidence); Vickery v. Medtronic, Inc., 2014 U.S. Dist. Lexis 12848, at *23-24 (S.D. Ala. Feb. 3, 2014) (rejecting attempt to create "mosaic" where evidence showed manager treated some employees unfavorably, but not due to their race); Conner v. Bell Microproducts-Future Tech, Inc., 492 Fed. App'x 963, 967, n. 1 (11th Cir. 2012).  Thus, Plaintiff's claim fails both under the traditional McDonnell Douglas framework, as well as under the more difficult Smith standard.[15]

## IV.    Conclusion

This is an exceptionally weak claim involving a disgruntled, foul-mouthed, abrasive, financially unethical, and rude former employee who was terminated for legitimate, non-discriminatory reasons.  She has not and cannot establish that her age or her sex played any role in the decision-making process. Accordingly, summary judgment is due on all claims.

---

[15] Unlike other cases in which courts have found a convincing mosaic, Plaintiff has not "demonstrated a motive to discriminate, incidents of [female] and [older] employees being treated differently, [or] the employer's conscious tracking of [age and sex] in disciplinary decisions." Moultrie v. Ga. Dep't of Corr., 703 F. App'x 900, 907 (11th Cir. 2017). Nor has Plaintiff shown "suspicious timing, ambiguous statements," pretext, "or other information from which discriminatory intent may be inferred." Jenkins v. Nell, 26 F.4th 1243, 1250–51 (11th Cir. 2022). Plaintiff has also not "cast sufficient doubt on [the Bank's] proffered reasons" or shown that the Bank "acted arbitrarily." Holley v. Ga. Dep't of Corr., 845 F. App'x 886, 891 (11th Cir. 2021) (per curiam).

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ John D. Bennett*
John D. Bennett
Georgia Bar No. 059212
jbennett@fmglaw.com

100 Galleria Parkway
Suite 1600
Atlanta, GA  30339
T:  (770) 818-0000
F:  (770) 937-9960

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| DEBRA HELTON, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | CIVIL ACTION FILE NO. |
| | ) | 5:21-cv-00404-MTT |
| v. | ) | |
| | ) | |
| THE GEO. D. WARTHEN BANK, | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing

MEMORANDUM OF LAW IN SUPPORT OF THE GEO D. WARTHEN BANK'S

MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system

which will automatically send e-mail notifications of such filing to all counsel of record:

> Kenneth E. Barton III
> Cooper, Barton & Cooper, LLC
> 170 College Street
> Macon, Georgia 31201
> keb@cooperbarton.com

This 16th day of September, 2022.

**FREEMAN MATHIS & GARY, LLP**

*/s/ John D. Bennett*
John D. Bennett
Ga. Bar No.: 059212

*Counsel For Defendant*

100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339-5948
T:  770.818.0000
E:  jbennett@fmglaw.com