IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DEBRA HELTON,  )<br>  )<br>  )<br>       Plaintiff,  )<br>  )<br>    v.  )<br>  )<br>THE GEO. D. WARTHEN BANK,  )<br>  )<br>  )<br>       Defendant.  )<br>_____) | CIVIL ACTION NO. 5:21-cv-404 (MTT) |

### ORDER

Plaintiff Debra Helton moved to disqualify Defendant The Geo. D. Warthen Bank's counsel, Freeman Mathis & Gary, LLP ("FMG"), because FMG now employs Helton's former counsel. Doc. 14. For the following reasons, Helton's motion to disqualify Warthen's counsel (Doc. 14) is **GRANTED**.

### I. BACKGROUND

Helton filed this employment discrimination suit against Warthen on November 12, 2021. Doc. 1. Emily Walker, then an attorney with Cooper, Barton & Cooper ("Cooper Barton"), entered the case as co-counsel for Helton on December 2, 2021. Docs. 4; 14 at 1. On July 16, 2022, Walker withdrew as counsel. Doc. 12. FMG "represents Defendant in various employment matters," including this case "since the original EEOC complaint was filed in July 2020." Doc. 24 at 8.

On June 15, 2022, Walker applied for a job at FMG. *Id*. at 3; Doc. 24-2 at 3. On June 16, 2022, Warthen's defense counsel learned of Walker's application, and informed FMG's human resources department that Walker would need to be "shielded"

from the *Helton* file.  Doc. 24-2 at 2-3.  Walker alleges that she informed Kenneth Barton, Helton's lead counsel, on July 1, 2022 that she "was leaving Cooper Barton & Cooper LLP for a job at Freeman Mathis & Gary, LLP."  Docs. 24-5 at 3 ¶ 1; 27 at 1-2.  Barton claims that Walker "told [him] that she was considering taking [an FMG] offer, and that if she did, she would be leaving her current position and beginning with [FMG] at the end of July or beginning of August," and that "[i]t did not appear that she had made a final decision at that time."  Doc. 27 at 1-2.

On July 6, 2022, Warthen's counsel notified FMG's IT department that Walker would be starting soon, and to "shield" her from the *Helton* file.  Doc. 24-3 at 4.  "On July 9, 2022, [Walker] compiled a list of all cases that [she] worked on at Cooper, Barton & Cooper.  Additionally, [she] marked cases for which Freeman Mathis & Gary were opposing counsel in red.  [She] emailed such list to Freeman Mathis & Gary … to undergo a conflict check."  Doc. 24-5 at 3 ¶ 4.  Barton acknowledges he confirmed with Walker the cases that FMG was opposing counsel, but alleges he "is not familiar with the list that Ms. Walker states that she prepared identifying potential conflicts."  Doc. 27 at 2.  Walker's last day at Cooper Barton was July 15, 2022.  Doc. 24-5 at 3 ¶ 2.

Walker began at FMG on August 8, 2022.  *Id*. at 3 ¶ 5.  In accordance with the scheduling order, discovery closed on August 17, 2022.  Doc. 9.  The next day, Barton reached out to defense counsel at FMG not about a potential conflict but rather to request Warthen's consent to reopen discovery.  Doc. 24-4 at 3.  On August 19, 2022, Warthen's counsel responded stating it would not consent to the motion.  *Id*. at 2.

On September 7, 2022, Helton moved to disqualify FMG.  Doc. 14.  That same day, Helton also moved to reopen discovery.  Doc. 13.  In response, Warthen's counsel

emailed Barton stating, "I am willing to consider withdrawing opposition to the motion to extend discovery if you/your client consents to the withdrawal of the motion to disqualify."  Doc. 27-2 at 6.  Barton discussed this proposal with his client the next day.  *Id*. at 3.  As far as the record reveals, this is when Helton learned that Walker now worked for FMG.  Helton made clear that she wanted Barton to pursue disqualification.  *Id*.

## II. STANDARD

"A district court is obliged to take measures against unethical conduct occurring in connection with any proceeding before it."  *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir. 1980) (citations omitted).[1]  "A motion to disqualify counsel is the proper method for a party-litigant to bring the issues of conflict of interest … to the attention of the court."  *Id*.  However, "disqualification is a harsh sanction, often working substantial hardship on the client, especially in cases such as this one where extensive discovery … [has] been completed.  As such, disqualification should be resorted to sparingly[.]"  *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982).  "Because a party is presumptively entitled to the counsel of his [or her] choice, that right may be overridden only if compelling reasons exist."  *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003) (internal quotation marks omitted) (citing *United States v. Locascio*, 6 F.3d 924, 931 (2d Cir. 1993) (referring to "an actual conflict or potentially serious conflict").  "The party moving to disqualify counsel bears the burden of proving the grounds for disqualification."  *Id*.

---

[1] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

"[W]here the district court's disqualification order is based on an allegation of ethical violation, the court may not simply rely on a general inherent power to admit and suspend attorneys, without any limit on such power.  The court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule[.]"  *Schlumberger Technologies, Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997).

### III. DISCUSSION

"Attorneys practicing in this Court are bound by the Georgia Rules of Professional Conduct, contained in the Rules and Regulations of the State Bar of Georgia, and judicial decisions interpreting those rules and standards."  *Adkins v. Hosp. Auth. of Houston Cnty.*, 2009 WL 3428788 at *7 (M.D. Ga. Oct. 20, 2009) *aff'd* 477 F. App'x 673 (11th Cir. 2012); *see also* M.D. Ga. L.R. 83.2.1 ("Attorneys practicing before this Court shall be governed by this Court's Local Rules, by the Rules of Professional Conduct adopted by the highest court of the state in which this Court sits, as amended from time to time by that state court, and, to the extent not inconsistent with the preceding, the American Bar Association Model Rules of Professional Conduct[.]").

**A. Walker's Conflict of Interest is Imputed to FMG.**

The Georgia Rules of Professional Conduct (the "Rules") provide that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former gives informed consent, confirmed in writing."  Ga. R. Prof. Cond. 1.9(a); *Rescigno v. Vesali*, 306 Ga. App. 610, 612, 703 S.E.2d 65, 68 (2010).  "While lawyers are associated in a firm, none

of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule[] … 1.9." Ga. R. Prof. Cond. 1.10(a). "[I]f one attorney in a firm has an actual conflict of interest, [a court] imputes that conflict to all the attorneys in the firm, subjecting the entire firm to disqualification." *Hodge v. URFA-Sexton, LP*, 295 Ga. 136, 139, 758 S.E.2d 314, 319 (2014) (cleaned up).

The Court finds, and FMG does not disagree, that Walker joining FMG on August 8, 2022 created a clear conflict of interest. First, it is undisputed that Walker "formerly represented" Helton. It is also undisputed that this case is the "same matter."[2] *See Brooks v. Quinlan*, 353 Ga. App. 573, 577, 839 S.E.2d 51, 55 (2020). Finally, it is undisputed that Warthen's interests "are materially adverse to the interests of" Helton's, and Helton did not provide written consent.

It is further undisputed that the conflict is imputed to FMG. Walker and Warthen's counsel are "associated in [the] firm," and Walker "practicing alone would be prohibited from" representing Warthen in this case under Rule 1.9(a). Moreover, this type of conflict arises "automatically." *Hodge*, 295 Ga. at 141, 758 S.E.2d at 320. Therefore, Helton has proved that FMG is subject to disqualification and thus has carried her burden.

**B. Helton's Counsel did not Implicitly Waive the Conflict.**

A court errs when it grants a motion to disqualify without first considering whether the conflict was waived. *See Zelda Enterprises, LLLP v. Guarino*, 343 Ga. App. 250,

---

[2] Typically, a court must determine whether the matters are "substantially related" under Rule 1.9. *See, e.g., Cardinal Robotics, Inc. v. Moody*, 287 Ga. 18, 21, 694 S.E.2d 346, 349 (2010) ("As the party seeking disqualification, [movant] had the burden to … [show] that the matters embraced within the pending suit are substantially related to the matters or the cause of action involved in the previous representation."). However, this case arises under the "same" matter part of Rule 1.9(a) and therefore that analysis is unnecessary.

254, 806 S.E.2d 211, 214 (2017).  FMG does not dispute that Helton did not expressly waive the conflict.  Doc. 24 at 5.  Instead, FMG argues that Barton implicitly waived the conflict.  *Id*.

A party can implicitly waive a former-representation conflict of interest through "[a] failure to make a reasonably prompt motion to disqualify[.]"  *Georgia Baptist Health Care Sys., Inc. v. Hanafi*, 253 Ga. App. 540, 541, 559 S.E.2d 746, 748 (2002).  "Although the length of the delay in bringing a motion to disqualify is obviously important, it is not dispositive."  *Id*. at 542, 559 S.E.2d at 748 (citation and internal quotation marks omitted).  "The court must consider the length of the delay in light of the circumstances of the particular case."  *Id*.  The circumstances to consider include (1) when the movant learned of the conflict, (2) whether the movant was represented by counsel during the delay, (3) why the delay occurred, and (4) whether disqualification would result in prejudice to the nonmoving party.  *Id*. (quotation marks omitted).  "The court must then weigh these factors against the seriousness of the conflict alleged and the extent to which the public's confidence in the administration of justice would be eroded if the motion was denied."  *Id*.

Because Helton moved to disqualify FMG in a reasonably prompt manner, the Court cannot find that Helton implicitly waived the conflict.

*1. The Length of the Delay was not Unreasonable.*

The parties dispute the time frame the Court should consider in analyzing the length of the delay.  Helton alleges it is 30 days; the clock began to run the day Walker started at FMG.  Doc. 27 at 6.  However, the inquiry is not when the conflict *arose*, as Helton alleges, it is when the movant *learned* of the conflict.  *See Georgia Baptist*, 253

Ga. App. at 542, 559 S.E.2d at 748.  Barton learned of the *potential* conflict on July 1, 2022, and by July 15, 2022, when Walker left the firm, Barton knew with near certainty of the looming conflict.  Docs. 14 at 2; 24 at 3, 5-6; 24-5 at 3.  Of course, there would be no grounds to move to disqualify until Walker was employed by FMG.  Nevertheless, for present purposes, the Court assumes that by July 15, 2022, Barton knew enough to raise the question of disqualification.  Therefore, the length of the delay is seven to eight weeks—from July 15, 2022 to September 7, 2022.

FMG argues that Barton's delay in moving to disqualify was unreasonable.  Doc. 24 at 5-11.  First, FMG asserts that the delay "may be considered 'inconsistent with a legitimate concern over the misuse of client confidences.'"  *Id*. at 6 (quoting *Georgia Baptist*, 253 Ga. App. at 542, 559 S.E.2d at 748).  But the Georgia Court of Appeals came to this conclusion where the delay was *eight months*, not seven to eight weeks.  *Id*.  Similarly, in *Peacock v. Spivey* and *Yates v. Dublin Sir Shop, Inc.*, the Georgia Court of Appeals held a delay of five months and a delay of two years unreasonable.  278 Ga. App. 338, 341, 629 S.E.2d 48, 52 (2006); 260 Ga. App. 369, 372, 579 S.E.2d 796, 799 (2003).  And the Georgia Court of Appeals has also concluded there was an unreasonable delay when the movant did not move to disqualify until after judgment was entered, and also where the movant knew of the conflict before filing its complaint and waited until after filing it to move to disqualify.  *Head v. CSX Transp., Inc.*, 259 Ga. App. 396, 399, 577 S.E.2d 12, 15 (2003); *Rescigno*, 306 Ga. App. at 613, 703 S.E.2d at 69.

On the other hand, the Georgia Court of Appeals has held that eighteen months, although "troubling and unexplained," was not an unreasonable delay because there

was "little prejudice to the defendants" since discovery was not yet complete. *Shuttleworth v. Rankin-Shuttleworth of Georgia, LLC*, 328 Ga. App. 593, 597, 759 S.E.2d 873, 877 (2014).  And a Georgia Bankruptcy court found that a year delay was not unreasonable.  *See In re Cabe & Cato, Inc.*, 524 B.R. 870, 879 (Bankr. N.D. Ga. 2014).  In short, no authority supports FMG's position that the delay here was unreasonable.  Of course, in the end the question turns on the facts and circumstances of this case.  And while Barton should have at least raised the issue earlier than he did, the Court cannot, on the facts here, find that Barton's delay was unreasonable to the point that he waived Helton's right to object to her former attorney working for opposing counsel.

Finally, FMG alleges that Barton may have been more interested in using the conflict to leverage a discovery extension.  That could be, but that cuts against FMG.  If FMG is correct, Barton got what he wanted—consent to reopen discovery in return for withdrawing the motion to disqualify.  But when Barton took the "deal" to Helton, she made clear she wasn't interested.  Doc. 27-2 at 3.  In the Court's experience, rare is the client who would feel comfortable with her lawyer switching sides.[3]  Even if it could be said Barton had ulterior motives and as a result delayed *slightly* pursuing disqualification, the Court cannot say that slight delay waived *Helton's* right to stand on her rights.

In sum, the Court finds no unreasonable delay.

---

[3] The Court does not impugn Walker or FMG; Walker was isolated from Helton's case.  But clients tend to view these matters differently.

*2. The* Georgia Baptist *Factors.*

Given the relatively short delay, the Court thinks it unnecessary to review the *Georgia Baptist* factors because the factors are seemingly used to weigh the consequences of an unreasonable delay. But FMG's argument largely rests in these factors, and the Court addresses them.

FMG argues that Helton was represented during the delay, that Helton offers no reason for the delay, and that Warthen would be prejudiced if FMG is disqualified. Doc. 24 at 6-11. It is undisputed that Helton has been represented throughout this litigation. Therefore, the Court proceeds to analyze Helton's reason for the delay and the prejudicial effect of disqualification.

First, FMG asserts that "[n]owhere in her twelve-page disqualification motion does Plaintiff give any explanation for her delay." *Id*. at 6. But the Court finds that Helton's explanation for her delay—Barton wanting "to ensure that he had taken sufficient time to diligently research" before filing "such a drastic motion"—is sufficient, especially since the motion was not untimely. Doc. 27 at 9; *see, e.g., In re Cabe & Cato, Inc.*, 524 B.R. at 879 (the movant's failure to immediately seek disqualification was because "she 'was trying to get a handle on all of the facts' … and that she wanted to be on solid ground before filing such a motion.").

Next, FMG alleges that Warthen "would be severely prejudiced to lose its choice of counsel at this stage of the litigation." Doc. 24 at 8. "[T]he right to counsel is an important interest which requires that any curtailment of the client's right to counsel of choice be approached with great caution." *Blumenfeld v. Borenstein*, 247 Ga. 406, 408, 276 S.E.2d 607, 609 (1981). "Disqualification not only curtails a client's right to counsel

of choice, but results in expense and delay that are costly both to the client and to the administration of justice." *Georgia Baptist*, 253 Ga. App. at 541, 559 S.E.2d at 748.

The Court agrees that a party's freedom to choose its counsel is extremely important and that disqualification is inherently prejudicial. *See Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 434 (1985) ("To be sure, an order granting disqualification itself leads to delay. Alternate counsel must often be retained … [and] such counsel will need time to gain the knowledge of the disqualified attorneys. *But where the disqualification decision of the trial court is correct, this delay is unavoidable*.") (emphasis added); *see also Hodge*, 295 Ga. at 138, 758 S.E.2d at 318 (noting the consequences of granting a motion to disqualify: "inevitable delay of the proceedings and the unique hardship on the client including the loss of time, money, choice of counsel, and specialized knowledge of the disqualified attorney.").

But here, the prejudice is somewhat mitigated. Discovery is closed and FMG had prepared and has now filed Warthen's motion for summary judgment. If that motion is granted (it is not yet ripe), the prejudice is minimal. If it is denied, new counsel will commence trial preparation, just as FMG would have. Thus, disqualification occurs here not in the midst of discovery or on the eve of trial, but at a natural pause in the case. *See Head*, 259 Ga. App. at 398-99, 577 S.E.2d at 14 ("Where trial is calendared or commenced, delay in making [a] motion [to disqualify] will result in prejudice to the nonmoving party and cause the waste of judicial resources, requiring a shorter time between learning of the facts for disqualification and such motion to disqualify.").

*3. The Seriousness of the Conflict Outweighs any Prejudice.*

Weighing the explanation of the delay and prejudice of the delay against the seriousness of the conflict and the administration of justice, the Court finds that Helton did not implicitly waive the conflict. *Georgia Baptist*, 253 Ga. App. at 542, 559 S.E.2d at 748. This is not a case where the matters are "substantially related"—this is the same case involving the plaintiff's former counsel moving to the firm representing the defendant. And unlike in *Georgia Baptist* where the conflicted counsel had represented the defendant "for over ten years" against the same plaintiff, FMG has represented Warthen in this matter for a little over two years. *Id*.; Doc. 24 at 10.

There will, and have been, inevitable delays resulting from this motion, and the time, money, and specialized knowledge resulting from FMG's defense of Warthen are considerations the Court does not ignore. But "[a]fter the termination of a client-lawyer relationship, a lawyer has certain continuing duties with respect to confidentiality and conflicts of interest[.]" Ga. R. Prof. Cond. 1.9 cmt. 1. And "[t]he rule of imputed disqualification … gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm." *Id*. at 1.10 cmt. 6. Moreover, the purpose of Rules 1.9 and 1.10 is "to protect former clients, avoid the appearance of any impropriety, and maintain public confidence in the integrity of our adversarial system." *Hodge*, 295 Ga. at 139, 758 S.E.2d at 318 (citations omitted). Helton's interests and the confidence in the fair administration of justice outweigh any prejudice resulting from a reasonable delay.

**C. The Motion was not used as a Dilatory Tactic.**

FMG argues that Helton's disqualification motion is a "dilatory tactic," and beseeches the Court to "not allow this gamesmanship." Doc. 24 at 2, 12. Again, FMG believes "there is evidence that the motion to disqualify was brought about—not by any legitimate concern about confidence—but by Defendant's refusal to consent to reopening discovery." *Id*. at 11-12. To support its argument, FMG points out that "Plaintiff did not take a single deposition during six months of discovery" and "[t]he conflict concerns are a red herring for Plaintiff's real problem: she doesn't have any testimony to rebut summary judgment." *Id*. at 11. In response, Helton asserts that this allegation is based on "pure speculation" and that "her Motion has nothing to do with her request to reopen discovery." Doc. 27 at 9. As noted, there arguably was a short delay while Barton pondered a deal, but the delay was very short and Helton squelched the deal. Thus, even assuming a dilatory tactic, the client, the party with the rights, wanted no part of it.

True, the Court must be "mindful of counsel using motions to disqualify as a dilatory tactic." *Hodge*, 295 Ga. at 139, 758 S.E.2d at 318; *see also Cohen v. Rogers*, 338 Ga. App. 156, 166, 789 S.E.2d 352, 360 (2016) ("Because opposing counsel may employ a motion to disqualify to delay the proceedings or disrupt a case, we view disqualification as an extraordinary remedy that should be granted sparingly.") (internal quotation marks and citation omitted). And the Court is not surprised that Barton failed to take a single deposition.[4] But Barton owes a duty to his client, who insisted that Barton pursue disqualification. Doc. 27-2 at 3. Whatever Barton had in mind, Helton's

---

[4] The Court has repeatedly noted Barton's inability to comply with deadlines. *See*, *e.g.*, *Scott v. Macon-Bibb Cnty., GA*, 2022 WL 3328876 at *3 n. 4 (M.D. Ga. Aug. 11, 2022).

position is firm and the Court sees no conduct on Barton's part that undermines that position.

**D. Screening is not an Appropriate Measure.**

FMG's final argument against disqualification is that it effectively screened Walker. Doc. 24 at 12-15. However, the screening of Walker from the *Helton* file does not remedy the conflict. FMG explains that Warthen's lead defense counsel did not interview Walker and that the case file was "locked not just as to Ms. Walker, but as to everyone at the firm, other than [lead counsel], his legal assistant, and his associate." *Id*. at 15. While the Court agrees that screening Walker was sensible, it does not affect the outcome. As Helton points out, the Rules and the case law interpreting those rules are clear—"screening procedures will not cure the imputation of the conflict." Doc. 14 at 8.

First, screening is not mentioned in Rules 1.9 or 1.10. In fact, Rule 1.0, "Terminology and Definitions," specifically states in the comments that the "screened" definition "applies to situations where screening of a personally disqualified lawyer is permitted to imputation of a conflict under Rules *1.11 and 1.12*." Ga. R. Prof. Cond. 1.0(aa); cmt. 8 (emphasis added). If the Georgia Bar wanted to allow screening for situations beyond government employees, judges, or arbitrators, one would figure screening would be mentioned in those other rules. *See*, *e.g.*, Ga. R. Prof. Cond. 1.12(c) ("If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless … the disqualified lawyer is screened form any participation in the matter[.]"). But it is not.

Moreover, the Georgia Supreme Court has made clear that screening is not an effective remedy for imputed conflicts.  In *Hodge*, a case where Rules 1.9 and 1.10 were also at issue, the court held that law firms can screen nonlawyers to prevent imputed disqualification.  296 Ga. at 140, 758 S.E.2d at 319.  In coming to this conclusion, however, the court distinguished nonlawyers from lawyers.  The court recognized that states are split on whether screening is appropriate for nonlawyers:

> The minority approach, which is what [the movant] argues we should apply here, *is to treat nonlawyers the same way we treat lawyers*.  Under this approach, when a nonlawyer moves to another firm to work for opposing counsel, *the nonlawyer's conflict of interest is imputed to the rest of the firm thereby disqualifying opposing counsel* … Under [the majority] approach, *rather than automatic imputation and disqualification* of the new firm, lawyers hiring the nonlawyer *can implement screening measures* to protect any client confidences that the nonlawyer gained from prior employment."

*Id*. (emphasis added).

Thus, the court made its point by distinguishing nonlawyers from lawyers, making clear in the process that a *lawyer's* conflict of interest is imputed to a firm, and the firm cannot implement screening measures to avoid disqualification.  And it buttressed that point, noting that "nonlawyers have different training, responsibilities, and discovery and use of confidential information compared to lawyers" and that a "lawyer may always practice his or her profession regardless of an affiliation to a law firm.  Paralegals, legal secretaries, and other employees of attorneys do not have that option."  *Id*. at 141, 758 S.E.2d at 319-20 (cleaned up).  The Court rejects FMG's argument that this reasoning from *Hodge* is dicta and should be ignored—the Supreme Court repeatedly, and persuasively, distinguished the procedures allowed for lawyers to those allowed for nonlawyers in coming to its decision.  Doc. 24 at 13.

FMG points to the concurrence in *Hodge* to support its argument that screening could remedy the conflict.  However, Justice Nahmias's concurrence supports the Court's conclusion and, not incidentally, echoes this Court's sentiment.  Justice Nahmias suggested that the rule against screening for lawyers should be revisited.  *See Hodge*, 295 Ga. at 149, 758 S.E.2d at 325 ("It should be noted, however, that this is yet another case that raises questions about whether Rule 1.10, and in particular *its implicit rejection* of the use of screening measures … should be reconsidered and amended or at least clarified.") (emphasis added).  In the volatile employment market for lawyers, perhaps a more practical procedure for managing conflicts merits consideration, but that is not for this Court to decide.

FMG then argues that *Georgia Baptist* "found that screening was an appropriate prophylactic measure."  Doc. 24 at 13; 253 Ga. App. at 540, 559 S.E.2d at 746.  But as previously explained, *Georgia Baptist* merely provided factors to consider in determining whether there has been an implied waiver to a conflict of interest.  *Id*. at 542, 559 S.E.2d at 748.  True, the court stated that "although the nature of the conflict alleged is serious, it is the type of conflict which may be managed and ameliorated through screening[.]"  *Id*. at 542, 559 S.E.2d at 749.  But the court made that observation in the context of an unreasonable delay.  Nothing in *Georgia Baptist* suggests that in the absence of unreasonable delay, screening is appropriate.  In any event, the Georgia Supreme Court's decision in *Hodge* makes clear that screening cannot cure an attorney's conflict.  296 Ga. at 140, 758 S.E.2d at 319.

FMG also points to federal case law to show that screening is an appropriate remedial measure.  Doc. 24 at 14-15.  But the case FMG cites arises from Alabama, a

state that adopted the ABA's Rules of Professional Conduct.  *Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725 (11th Cir. 1988).  Walker's conduct is not controlled by the Eleventh Circuit's application of the ABA's rules.  On the contrary, the ABA rules only apply "to the extent [that they] are not inconsistent with" the Georgia Rules.  M.D. Ga. L.R. 83.2.1.  FMG's citation to a Federal Circuit opinion is equally unpersuasive.  Doc. 24 at 14-15.

## IV. CONCLUSION

Because Walker's departure from Cooper Barton to FMG created an imputed conflict that Helton did not waive, and which could not be screened, FMG is no longer permitted to represent Warthen in this case.  Accordingly, Helton's motion to disqualify (Doc. 14) is **GRANTED**.

**SO ORDERED**, this 3rd day of November, 2022.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT